IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:22-cv-80121-AMC

SARA WATTS,

     Plaintiff(s),

vs.

JOGGERS RUN PROPERTY OWNERS
ASSOCIATION, INC.

     Defendants.

_____/

## SECOND AMENDED COMPLAINT

Plaintiff, SARA WATTS, by and through the undersigned counsel, hereby sue Defendants,

JOGGERS RUN PROPERTY OWNERS ASSOCIATION INC.  ("Defendants"), and in support

thereof avers as follows:

## GENERAL ALLEGATIONS

1. This is an action by the Plaintiff for damages exceeding $30,000, excluding attorneys' fees or costs, for violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. §§ 3601-3631; 42 USC Section 1981 ("1981"); and 42 USC Section 1982 ("1982").

2. Defendant, JOGGERS RUN PROPERTY OWNERS ASSOCIATION INC., is a Florida Not For Profit Company, authorized to conduct business in Palm Beach County, Florida.

3. At all times material hereto, Plaintiff was a resident of the community subject to the governing documents of Defendant.

4. This Court has Jurisdiction over this action and may grant relief sought herein pursuant to 42

U.S.C. §§ 12133 and 12134 and because all actions related to this claim occurred within the jurisdiction of this court.

5. Venue is appropriate in Palm Beach County, Florida as this is where the Defendant has a registered place of business and the location where these allegations occurred pursuant to 28 U.S.C. §1391.

6. Declaratory, injunctive, legal and equitable relief sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

7. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiff, a black female African American individual, is a property owner and contracted member of the Jogger's Run Community.

9. Plaintiff was, at times relevant to this complaint, the rightful owner of 102 Maplewood Drive, West Palm Beach, FL 33415 per deed recorded on August 14, 2013, CFN20130362961.

10. Plaintiff purchased her home in Joggers Run community on August 14, 2013 and soon thereafter she moved into said home.

11. In 2015, Plaintiff decided to become a board member of Joggers Run Home Owners Association to try and help make her community a nicer community as she believe she had a lot to offer in the way of improvements to the community.

12. Upon the start of her services as a board member, Plaintiff realized that the board members of Joggers Run Home Owners Association where racist specifically against her, a Black-African-American individual. In particular, Elizabeth Keim, president of the association, and Shelly Harsh, board member, both White individuals.

13. Elizabeth Keim referred to non-White individuals as "monkeys" and Plaintiff was personally racially referred to as "Felicia" by Shelly Harsh when she stated to me "bye Felicia," a statement that is associated and referred to a Black-African-American crack addict.

14. When Plaintiff initially moved into Joggers Run the basketball courts were closed.  While on the board Plaintiff presented a proposal to have the basketball courts reopened for the children in the community.

15. Plaintiff's proposal was denied several times because according to the board, there had been several issues in the past with trespassers and there being too many "people of color" using the courts and thus allegedly abused the courts. However, the basketball court was an amenity that was formally offered to the homeowners and in which the homeowners paid association fees for.

16. Later, the basketball courts were finally opened and while Plaintiff's son was at the court playing with his friends, on or about August 14, 2019, Shelly Harsh, White-Board member, came out and ran to the courts to begin yelling at my son, saying "get the fuck off the court" multiple times.

17. Plaintiff's son's friend proceeded to call his mother due to her aggressive and discriminatory behavior and she proceeded to bully Plaintiff's son and his friend by mocking them as they were calling their mother's saying, "mom, mommy, she's being a big bully." She then followed by making fun of the children present calling them names and referring to their appearance in a derogatory manner.

18. Thereafter, the courts were once again shut down due to the White board members, Shelly and Elizabeth's complaints that there were too many black kids at the court and the game of basketball made too much noise.

19. Plaintiff's opposition to the discriminatory statements and acts brought on by the board members got her removed from the board when she received a letter from Cady Jamason and Brenda Pritt, dated October 18, 2017, on behalf of the board, advising that Plaintiff had been resigned from her position as a board member.

20. Plaintiff wrote a letter dated November 13, 2017 wherein she explained that the racial discrimination she faced prior to being pushed out without notice.

21. Thereafter, the racial and national origin discriminatory acts upon Plaintiff became profound and have affected her emotionally, physiologically and financially as she has had to seek medical treatment and move from her home.

22. Plaintiff has been targeted by the board president, Elizabeth Keim and board member Shelly Harsh. Plaintiff was the only Black-African-American person at board meetings and she was the only one told that she had only 3-minutes to speak when the floor was open for questions or comments to the board members.

23. On one occasion, Plaintiff was escorted out of board meeting with police officers.

24. Plaintiff has been forced to surrender her service dog due to an escalated act from a White Neighbor, yet another White neighbor was allowed to have a Pitbull, a bread that is specifically forbidden from the community.

25. Plaintiff's cars have been under surveillance, vandalized, and towed. Yet, White board member, Janice, was allowed to park a non-decaled car in her drive way over night with no sticker or towing consequences.

26. Plaintiff's son works in the restaurant industry and he usually gets off quite late. Plaintiff spoke with board president, Elizabeth Keim, about the trouble her son faced when he got home and there was no available parking for him. Elizabeth's response to the situation was "I don't have

answers for you."

27. Plaintiff told Elizabeth that the only solution she came up with was having her son place a hand written note on his dashboard indicating that he was a homeowner and that there were no available parking spaces when he parked in front of the house. Per the parking rules, residents are to hand write a note if a car is going to be parked overnight out of a parking spot.

28. Plaintiff placed Elizabeth on notice of the situation as she is the one who was to be informed when a guest pass was needed. She did not take corrective actions to fix the parking situation as Plaintiff was not allowed to park her car in a guest spot if her driveway was free. So Plaintiff's son continued this parking practice on the nights that he truly did not find parking.

29. Then one morning Plaintiff's son woke up and went outside around 10:00am to find the car was gone. Plaintiff did not receive warning stickers or notices prior to the towing as is required. Per the parking rules a car gets two warning notices before being towed.

30. Joggers Run had selective enforcement on the parking rules, specifically with minorities such as Plaintiff, as Janice, a White-board member, would allow her boyfriend to park in her driveway without a decal or a parking sign visible and she would not receive citations or be subjected to tows.

31. Another incident occurred during COVID when Plaintiff requested an updated parking decal sticker for her son's car. Plaintiff sent in all required documentation. Plaintiff called the association to inform them that my son's tag was expired and they were having a hard time obtaining an appointment date and time at the DMV to get it renewed. Thus, again, placing the association on notice of the incident and difficulty with her son parking his car in the community and asking them to please work with her.

32. Instead, Plaintiff's son's car was towed and then sold at auction, causing them to lose

approximately $4,500.00, the value of the car at the time of the incident, and leaving her son carless due to Joggers Run discriminatory treatment against Plaintiff due to her race and national origin.

33. Plaintiff's guest, a Black-African-American male, was falsely accused of trespassing and vandalizing cars in the community when he parked his car in Plaintiff's drive way and was then forbidden from visiting Plaintiff for fear of a trespass arrest.

34. Plaintiff received numerous "violation" notices from the association for bogus matters, which included, "being un-neighborly" when Elizabeth Keim, association president, yelled at Plaintiff and tried to issue a no-trespass order on Plaintiff from her home for speaking to her about parking issues within our community as is required by the board rules.

35. Plaintiff's children have been the victim of discriminatory acts as well, when Shelly Harsh yelled and bullied them while they played basketball on the courts with other friends. Harsh has them leave the courts and later pushed for the courts to be closed once again.

36. When the roofs of the homes in the community needed repair, Plaintiff was again discriminated against as her home was overpassed to allow for a White board member's roof to be fixed with no charges to him. Plaintiff was charged mysterious fees by the association and then given partial credit to cover up the unjustified fees.

37. Plaintiff received a certified letter for having a yard sale during the beginning of the pandemic that she caused harm to the community when a white neighbor had had a yard sale a month before her. There were no notices written about not having yard sales yet Plaintiff was sent a notice.

38. Plaintiff received another certified letter about there being things in her yard with no description yet a white neighbor that lives just two doors from Plaintiff has a hideous yard and leaves his

dog poop in bags at his back patio and left his trash bin out for about a month and he now sits on the board; his name is Chris.

39. Ultimately, on or about March 30, 2022, Plaintiff was forced to sell her home and leave the community without a new residence, leaving her and her two teenage children displaced and split up to live with friends, place their personal belonging in storage and with the possibility of not being able to obtain a new home.

40. Plaintiff felt that she had no choice but to sell her home based on racially-motivated harassment including but not limited to the following:

A. While attending board meetings Plaintiff would be told in a nasty and hostile tone, that she only had 3-minutes to speak. However, none of the other White individuals were told this directive.

B. Plaintiff was removed from the board and told she was resigned from the board without notice due to bogus reasons. However, it was done in discrimination to Plaintiff's race and national origin.

C. Plaintiff received numerous "violation" letters via certified mail, to the best of her recollection she received letters dated: 4/29/19, 8/5/19, 11/15/19, 1/8/20, 6/24/20, 6/25/20, and 7/2/20.

D. The police were constantly called to Plaintiff's home and Elizabeth Keim tried to issue a no trespassing restraint against her.

E. Plaintiff's cars were stickered and towed despite multiple communications via e-mails regarding circumstances involving the cars.

F. Plaintiff was called and harassed about her dog when it was the neighbor, John Young, who's dog was not in control causing Plaintiff's dog to escape from her porch and run

up to John Young. The association gave John Young Plaintiff's telephone number without her permission to do so.

41. Selling her home was the only way to end the race and national origin discriminatory treatment against Plaintiff by Joggers Run Home Owners Association. Plaintiff's White, non-African-American neighbors were not subjected to the same discriminatory, harassing and retaliatory treatment she was subjected to.

42. Plaintiff sent multiple emails and filed a police report regarding the systemic racism she was subjected to by Joggers Run Property Owners Association and specifically, board president, Elizabeth Keim, board member, Shelly Harsh, property managers, Cady Bond, David Grimmett and Evan Gromet. The emails are dated as early as 2019 through the end of her living at Joggers Run.

43. Plaintiff called the police on June 12, 2019 to file a report of harassment and discrimination. Plaintiff had an attorney send a cease and desist letter to the board and property managers on November 18, 2019. Plaintiff created a video blog online to demonstrate the continuous discrimination she was facing. Plaintiff did everything in her power to place the association and its board members on notice of the discriminatory treatment they were subjecting her to. Plaintiff was tormented and discriminated against to such a point of making her sell her home to end the discriminatory treatment from Joggers Run.

44. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

45. Plaintiff Timely filed discrimination complaints with the U.S. Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a) on December 6, 2021.

46. Declaratory, injunctive, legal, and equitable relief is sought pursuant to the laws set forth above together with attorneys' fees, costs and damages

47. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## COUNT I
### Violation of 42 U.S.C. § 3604(b)

48. Plaintiff adopts and incorporates Paragraphs 1 – 47 above.

49. Plaintiff is a member of a protected class under the FHA as she is African American.

50. Based on Defendant's comments and actions herein alleged, Plaintiff alleges and believes Defendant's conduct is motivated by discriminatory intent based on Plaintiff's membership in protected classes in contravention of 42 U.S. C. § 3604(b).

51. Defendant has subjected  Plaintiff  to harassment that has the effect of imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting services in connection therewith on the basis of race, national origin, familial status, and/or disability status in violation of 42 U.S.C. § 3604(b) and , and/or constitutes unwelcome conduct that is sufficiently severe or pervasive as to interfere with the use or enjoyment of Plaintiff's dwellings and the terms, conditions, and privileges thereof. This harassment has included derogatory comments based on Plaintiff race, coercive and threatening conduct or notices designed to intimidate Plaintiff's tenants, and the imposition of citations and violations directed towards Plaintiff and not towards other white members of the community.

52. Defendant's conduct was intentional, willful, and made in reckless disregard of the known rights of Plaintiff.

WHEREFORE, Plaintiff requests that this honorable court issue the following relief:

        A.  injunctive relief;

      B.  declaratory relief;

      C.  compensatory and punitive damages;

      D.  statutory damages;

      E.  costs of suit, including reasonable attorney's fees; and

      F.  all such other relief as the court deemed just.

**COUNT II**
**Violation of 42 U.S.C. § 3617**

53. Plaintiff adopts and incorporates Paragraphs 1 – 47 above.

54. Plaintiff is a member of a protected class under the FHA as she is African American.

55. Based on Defendant's comments and actions herein alleged, Plaintiff alleges and believes Defendant's conduct is motivated by discriminatory intent based on Plaintiff's membership in protected classes in contravention of 42 U.S. C. § 3617.

56. Defendant has subjected  Plaintiff  to harassment that has the effect of imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting services in connection therewith on the basis of race, national origin, familial status, and/or disability status in violation of 42 U.S.C. § 3617 and , and/or constitutes unwelcome conduct that is sufficiently severe or pervasive as to interfere with the use or enjoyment of Plaintiff's dwellings and the terms, conditions, and privileges thereof. This harassment has included derogatory comments based on Plaintiff race, coercive and threatening conduct or notices designed to intimidate Plaintiff's tenants, and the imposition of citations and violations directed towards Plaintiff and not towards other white members of the community.

57. Defendant's conduct was intentional, willful, and made in reckless disregard of the known rights of Plaintiff.

WHEREFORE, Plaintiff requests that this honorable court issue the following relief:

       A. injunctive relief;

       B. declaratory relief;

       C. compensatory and punitive damages;

       D. statutory damages;

       E. costs of suit, including reasonable attorney's fees; and

       F. all such other relief as the court deemed just.

## COUNT III
## Violation of 42 U.S.C. § 1981

58. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-47 of this complaint as if set out in full herein.

59. At all times material hereto Plaintiff was and is a member of a protected race class as African American within the meaning of 42 U.S.C. §1981.

60. At all relevant times, Plaintiff has been a contracted resident of Defendant's community, including a period of time on the board of directors for the community.

61. At all relevant times, Plaintiff was and continues to be a resident of Defendant's Community.

62. Defendant has engaged in a pattern of continuous intentional discrimination against Plaintiff.

63. Plaintiff was discriminated against based on alleged violations of the contractually agreed to covenants and restrictions of the community Homeowner Association Rules and Regulations.

64. Defendant crafted and implemented a plan to harm Plaintiff based on intentional race discrimination.

65. Plaintiff was singled out for treatment in a discriminatory manner by Defendant because of her race.

66. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its agents were  aware  that discrimination on the basis of race was

unlawful but acted in reckless disregard of the law.

67. Plaintiff complained about the racial discriminatory attacks on Plaintiff in a private and public manner.

68. Defendant, through the actions of its agents, outrageously disregarded the requirements to investigate and remedy claims of discrimination.

69. The actions of the Defendant were based upon the Plaintiff being a black individual. The Defendant subjected the Plaintiff to race based animosity.

70. When the Defendant acted against the Plaintiff's contractual rights and privileges, it did so in a manner that was directed towards plaintiff and not towards other white members of the community.

71. As a result of the actions of the Defendant, as alleged herein, the Plaintiff has been deprived of her rights and has been exposed to ridicule and embarrassments and has suffered emotional distress and damage.

72. At all times material hereto, the Defendant's agents and representatives exhibiting discriminatory conduct towards Plaintiff were in a position that possessed the authority to affect the terms, conditions, and privileges of the Plaintiff's contract with the Defendant.

73. The conduct of the Defendant, by and through the conduct of its agents and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of her statutory rights under federal law.

74. The actions of the Defendant and/or its agents were willful, wanton, and intentional and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the

future.

75. The Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of the Defendant's discriminatory practices unless and until this Court grants relief.

76. The Plaintiff has retained undersigned counsel to prosecute his claim and is entitled to attorney's fees pursuant to 42 U.S.C. §1988, the Civil Rights Attorneys Fee Award Act.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

    A.  Enter judgment for Plaintiff and against the Defendant on the basis of Defendant's willful violations of 42 U.S.C. §1981; and

    B.  Award Plaintiff compensatory damages; and

    C.  Award Plaintiff as to this count prejudgment interest; and

    D.  Award Plaintiff damages for the amount of the costs of litigation and filing including attorney's fees; and

    E.  Grant such other and further equitable relief as this court deems equitable and just and/or available pursuant to State and Federal Law including punitive damages.

### **COUNT IV**
### **Violation of 42 U.S.C. § 1982**

77. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-47 of this complaint as if set out in full herein.

78. At all times material hereto Plaintiff was and is a member of a protected race class as African American within the meaning of 42 U.S.C. §1982.

79. At all relevant times, Plaintiff has been a contracted resident of Defendant's community, including a period of time on the board of directors for the community.

80. At all relevant times, Plaintiff was and continues to be a resident and property owner in Defendant's Community.

81. Defendant has engaged in a pattern of continuous intentional discrimination against Plaintiff.

82. Plaintiff was discriminated against based on alleged violations of the contractually agreed to covenants and restrictions of the community Homeowner Association Rules and Regulations.

83. Defendant crafted and implemented a plan to harm Plaintiff based on intentional race discrimination.

84. Plaintiff was singled out for treatment in a discriminatory manner by Defendant because of her race.

85. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its agents were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

86. Plaintiff complained about the racial discriminatory attacks on Plaintiff in a private and public manner.

87. Defendant, through the actions of its agents, outrageously disregarded the requirements to investigate and remedy claims of discrimination.

88. The actions of the Defendant were based upon the Plaintiff being a black individual. The Defendant subjected the Plaintiff to race based animosity.

89. When the Defendant acted against the Plaintiff's contractual rights and privileges, it did so in a manner that was directed towards plaintiff and not towards other white members of the community.

90. As a result of the actions of the Defendant, as alleged herein, the Plaintiff has been deprived of her rights and has been exposed to ridicule and embarrassments and has suffered emotional

distress and damage.

91. At all times material hereto, the Defendant's agents and representatives exhibiting discriminatory conduct towards Plaintiff were in a position that possessed the authority to affect the terms, conditions, and privileges of the Plaintiff's contract with the Defendant.

92. The conduct of the Defendant, by and through the conduct of its agents and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of her statutory rights under federal law.

93. The actions of the Defendant and/or its agents were willful, wanton, and intentional and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

94. The Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of the Defendant's discriminatory practices unless and until this Court grants relief.

95. The Plaintiff has retained undersigned counsel to prosecute his claim and is entitled to attorney's fees pursuant to 42 U.S.C. §1988, the Civil Rights Attorneys Fee Award Act.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

    A. Enter judgment for Plaintiff and against the Defendant on the basis of Defendant's willful violations of 42 U.S.C. §1982; and

    B. Award Plaintiff compensatory damages; and

    C. Award Plaintiff as to this count prejudgment interest; and

    D. Award Plaintiff damages for the amount of the costs of litigation and filing

including attorney's fees; and

E. Grant such other and further equitable relief as this court deems equitable and just and/or available pursuant to State and Federal Law including punitive damages.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: July 14, 2022                                  Respectfully submitted,

/s/  Jason S. Remer

Jason S. Remer, Esq.
Florida Bar No. 165580
jremer@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler St., Suite 2200
Miami, FL 33130
Phone:  305-416-5000
Fax: 305-416-5000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Eric C. Sprechman, Esq.
Sadaf Chaudhry, Esq
COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
Esperante Building
222 Lakeview Ave., Suite 120
West Palm Beach, Florida 33401
Telephone: (561) 383-9200
Facsimile: (561) 683-8977
eric.sprechman@csklegal.com
sadaf.chaudhry@csklegal.com
peggy.may@csklegal.com

/s/ Jason S. Remer
**Jason S. Remer, Esq.**
Florida Bar No.: 165580
jremer@rgpattorneys.com