UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-80121-CIV-CANNON

SARA WATTS,

    Plaintiff,

v.

JOGGERS RUN PROPERTY
OWNERS ASSOCIATION, INC.,

    Defendant.
_____/

## ORDER GRANTING
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [ECF No. 18], filed on August 2, 2022. The Court has reviewed the Second Amended Complaint [ECF No. 17], the Motion [ECF No. 18], Plaintiff's Response in Opposition [ECF No. 22], Defendant's Reply [ECF No. 23], and the full record. For the reasons set forth below, the Motion [ECF No. 18] is **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff Sara Watts is an African American former resident of the housing community managed by Defendant Joggers Run Property Owners Association, Inc. [ECF No. 17 ¶¶ 8, 9–10, 39]. Plaintiff purchased her home in the Joggers Run community on August 14, 2013 [ECF No. 17 ¶ 10]. In 2015, Plaintiff became a board member of the Joggers Run Homeowners Association [ECF No. 17 ¶ 11]. Plaintiff alleges that, upon joining the board, she was subjected to racial discrimination by other board members, specifically Shelly Harsh and the President of the Association, Elizabeth Keim [ECF No. 17 ¶ 12]. Plaintiff alleges that Elizabeth Keim referred to non-white individuals as "monkeys" [ECF No. 17 ¶ 13]. Plaintiff also states that Shelly Harsh

once told Plaintiff "Bye Felicia," which Plaintiff alleges is a phrase associated with a "Black-African-American crack addict" [ECF No. 17 ¶ 13].

When Plaintiff moved into the community, the basketball courts were closed to everyone [ECF No. 17 ¶ 14]. Once Plaintiff joined the board, Plaintiff attempted to get the courts reopened [ECF No. 17 ¶ 14]. Plaintiff alleges that the board denied the proposal to reopen the courts multiple times and justified the decision by stating that, when the courts had been opened before, there were "too many people of color using the courts" [ECF No. 17 ¶ 15]. When the board finally reopened the basketball courts to the community, Plaintiff alleges that Shelly Harsh harassed her son and told him to "get the fuck off the court" [ECF No. 17 ¶ 16]. Thereafter, Plaintiff alleges that the board again closed the courts for everyone [ECF No. 17 ¶ 18]. Plaintiff alleges that the board made the decision to re-close the courts based on Elizabeth Kein's and Shelly Harsh's statements that "there were too many black kids at the court and the game of basketball made too much noise" [ECF No. 17 ¶ 18].

Plaintiff also avers that two years prior to the basketball courts being re-closed, the other board members had Plaintiff removed as a board member because Plaintiff opposed the discriminatory actions and statements by the white board members [ECF No. 17 ¶ 19]. Plaintiff alleges that she was the only "Black-African-American" person present at board meetings and the only attendee whose speaking privileges were limited to a three-minute time limit [ECF No. 17 ¶ 22]. Plaintiff further alleges that police removed her from one of the board meetings [ECF No. 17 ¶ 23].

Finally, Plaintiff alleges that the Joggers Run Property Association selectively enforced parking rules against Plaintiff and her family based on their race [ECF No. 17 ¶¶ 25–32]. Specifically, Plaintiff states that a white board member was "allowed to park a non-decaled car in her [the board member's] driveway over night with no sticker or towing consequences," whereas

Plaintiff's son had his car towed for a similar action [ECF No. 17 ¶¶ 25, 27–29]. Plaintiff further asserts that the association's rules were selectively enforced against her based on her race, because she was "forced to surrender her service dog due to an escalated act from a White Neighbor," while another "White Neighbor was allowed to have a Pitbull, a bre[e]d that is specifically forbidden from the community" [ECF No. 17 ¶ 24]. Other examples of alleged selective enforcement cited by Plaintiff include (1) being reprimanded for holding a yard sale after a white neighbor held a yard sale one month earlier; and (2) being reprimanded for "there being things in her yard with no description[,] yet a white neighbor that lives just two doors from Plaintiff has a hideous yard and leaves his dog poop in bags at his back patio and left his trash bin out for about a month" [ECF No. 17 ¶¶ 37–38].

Plaintiff states that the alleged harassment outlined above "forced her to sell her home and leave the community without a new residence" [ECF No. 17 ¶ 39–40]. According to Plaintiff, "selling her home was the only way to end the race and national origin discriminatory treatment against Plaintiff by Joggers Run Homeowners Association," noting further that her "White, non-African-American neighbors were not subjected to the same discriminatory, harassing and retaliatory treatment" [ECF No. 17 ¶ 41]. "As a result of Defendant's action," Plaintiff continues, "Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage" [ECF No. 17 ¶ 44]. Finally, Plaintiff states that she "filed discrimination complaints with the U.S. Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a) on December 6, 2021" and thus has met all conditions precedent for filing this action [ECF No. 17 ¶¶ 45, 47]. Plaintiff seeks declaratory, injunctive, legal, and equitable relief, including attorneys' fees, costs, and damages [ECF No. 17 ¶ 46].

**PROCEDURAL HISTORY**

In December 2021, Plaintiff filed suit in the Fifteenth Judicial Circuit in and for Palm Beach

County, Florida, alleging violations of federal housing discrimination laws [ECF No. 1-4 (citing 24 C.F.R. § 100.65, 42 U.S.C. § 3604(b), and 42 U.S.C. § 1981)]. Defendant subsequently removed the action to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 [ECF No. 1]. In February 2022, Plaintiff filed a First Amended Complaint (the "FAC"), asserting the following claims against Defendant:

- <u>Count I</u> – Violation of 42 U.S.C. § 3604(b);
- <u>Count II</u> – Violation of 42 U.S.C. § 3617;
- <u>Count III</u> – Violation of 42 U.S.C. § 1981; and
- <u>Count IV</u> – Violation of 42 U.S.C. § 1982.

[ECF No. 9]. Defendant subsequently moved to dismiss all four counts in the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in July 2022, the Court granted Defendant's Motion [ECF Nos. 13, 16]. In its Order Dismissing the FAC, this Court noted that Plaintiff would "have one final opportunity to plead its claims" by filing an amended complaint "no later than July 27, 2022" [ECF No. 16 p. 6].

Plaintiff filed the operative Second Amended Complaint ("SAC") on July 14, 2022, bringing the same claims raised in the FAC [ECF No. 17]. Defendant again moves to dismiss all four counts pursuant to Rule 12(b)(6) [ECF No. 18]. The Motion is ripe for adjudication [ECF Nos. 22, 23].

**LEGAL STANDARD**

Rule 8(a)(2) requires complaints to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim for relief is plausible if the complaint contains factual allegations that allow

"the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545). Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## DISCUSSION

Defendant argues that the SAC fails to cure the deficiencies highlighted by the Court in the Order Dismissing the FAC and therefore fails to state any claim [ECF No. 18]. The Court addresses the four counts in turn, agreeing that dismissal is warranted.

### I. Violation of 42 U.S.C. § 3604(b)

Count I of Plaintiff's SAC asserts that Defendant violated 42 U.S.C. § 3604(b), a section of the Fair Housing Act of 1968 ("FHA") [ECF No. 17 ¶¶ 48–52]. That Section makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of *sale or rental of a dwelling*, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b) (emphasis added).

Defendant argues that, like the FAC, Count I in the SAC "again fails to allege a violation of Section 3604(b)[,] because Plaintiff was and had been, at all material times, a homeowner in the community and because the alleged discrimination did not relate to the buying, selling, or renting of a dwelling" [ECF No. 18 p. 5]. Defendant emphasizes that, "aside from one passing, generalized allegation that Defendant's supposed conduct was designed to intimidate Plaintiff's tenants, there are no other allegations that Plaintiff rented her unit and/or had any tenants" [ECF No. 18 p. 5] (quoting [ECF No. 17 ¶ 51]) (internal quotations omitted). Plaintiff disagrees, emphasizing that the SAC contains enough factual allegations to support a claim based on so-

called "post-acquisition conduct," which can be actionable under Section 3604(b) [ECF No. 22 pp. 4, 6]. *See Georgia State Conf. of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627, 632 (11th Cir. 2019) ("[T]he plain language of § 3604(b) may, under certain circumstances, encompass the claim of a current owner or renter for discriminatory conduct related to the provision of services, as long as those services have a connection to the sale or rental of the dwelling").

Although Plaintiff is correct that Section 3604(b) can reach post-acquisition conduct, the conduct in question nevertheless must "be connected to the sale or rental of a dwelling," *id.* at 632–33, and that is not the case here based on the allegations in the FAC. Plaintiff alleges that she was (1) removed from the board [ECF No. 17 ¶ 19]; and (2) targeted due to her race as evidenced by her vehicles being towed without notice [ECF No. 17 ¶¶ 22, 25–32], being forced to give up her service dog [ECF No. 17 ¶ 24], and receiving notices of various violations [ECF No. 17 ¶¶ 34, 37–38; *see* ECF No. 22 p. 6 (relying on those allegations to argue that the SAC plausibly states a Section 3604(b) claim)]. These factual allegations, while undoubtedly troubling, do not support a Section 3604(b) claim because they do not relate to the sale or rental of a dwelling. Just like Plaintiff's FAC, the only proffered connection between the alleged discriminatory conduct and the sale or rental of a dwelling is the generalized assertion that the conduct was "designed to intimidate Plaintiff's tenants" [ECF No. 17 ¶ 51]. Without more, this is insufficient to state a claim under Section 3604(b).

## II.   Violation of 42 U.S.C. § 3617

Count II of Plaintiff's SAC is brought under 42 U.S.C. § 3617, another section of the FHA. That Section makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section[s] 3603, 3604, 3605, 3606 of this title." 42 U.S.C. § 3617. "A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed 'any right granted or protected by' Sections

3603–3606; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." *Moore v. Camden Prop. Tr.*, 816 F. App'x 324, 335 (11th Cir. 2020); *see also LaGrasso v. Seven Bridges Homeowners Ass'n, Inc.*, No. 20-81163-CV, 2021 WL 3417809, at *9 (S.D. Fla. May 14, 2021), *appeal dismissed sub nom. LaGrasso v. Seven Bridges Homeowners Associations Inc.*, No. 21-12580-JJ, 2021 WL 5071449 (11th Cir. Sept. 27, 2021).

Defendant argues that Count II of Plaintiff's SAC fails for two reasons—first, because Plaintiff "fails to clearly identify the statutory rights [under sections 3603–3606] affected by the described conduct" [ECF No. 18 p. 6], and second, because Plaintiff's allegations are "entirely speculative" and therefore insufficient to state a claim under Section 3617 [ECF No. 18 p. 7].

Although the SAC cures the second justification for the Court's dismissal of Count II by providing additional detail about derogatory statements directed at her and more facts about violation notices and towing incidents in the Joggers Run Community [ECF No. 17 ¶¶ 13, 25–32, 37–38], Plaintiff again fails to allege which rights under Sections 3603–3606 were violated by Defendant's conduct. Indeed, Plaintiff does not address this particularized deficiency in the Response to Defendant's Motion [*See* ECF No. 22 pp. 7–8]. Instead, Plaintiff makes the broad argument that the SAC "alleges several instances of discrimination," which "have interfered with Plaintiff's rights to use and enjoy her property and to participate in activities of the Association" [ECF No. 22 pp. 7–8]. Because Plaintiff still fails to identify what rights Defendant's conduct infringed under Sections 3603–3606, Plaintiff fails to state a plausible claim under Section 3617, warranting dismissal of Count II. *See United States v. Advoc. L. Groups of Fla.*, 413 F. Supp. 3d 1225, 1236 (M.D. Fla. 2019) (dismissing Section 3617 claims that did not clearly "identify the FHA right infringed").

**III.     Violation of 42 U.S.C. § 1981**

Count III alleges that Defendant violated 42 U.S.C. § 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). To state a claim under Section 1981, a plaintiff "must allege (1) intentional racial discrimination (2) that caused a contractual injury." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). "A contractual injury includes any injury relating to the making, performance, modification, or termination of the contract, or to the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* (quoting 42 U.S.C. § 1981(b)).[1]

In previously dismissing Count III, this Court noted Plaintiff's failure to offer additional or specific information about the violation notices and towing incidents, making it "entirely unclear which contractual 'covenants and restrictions' were allegedly violated" [ECF No. 16 p. 5]. While Plaintiff's SAC does lay out in more detail the circumstances surrounding the towing of her vehicles and the various notices she received, it still fails to identify any contractual covenant or restriction that Defendant allegedly violated [ECF No. 17 pp. 25–32, 37–38, 58–76]. The SAC makes only generalized references to a purported contract and covenants thereof [ECF No. 17 ¶¶ 8, 60, 63, 70, 72]. Count III alleges, for example, that "[w]hen the Defendant acted against the

---

[1] Section 1982(b) defines the phrase "make and enforce contracts" as encompassing "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1982(b). Plaintiff does not allege that Defendant prevented Plaintiff from making, performing, modifying, or terminating a contract, referencing instead alleged interference with Plaintiff's right to enjoy the benefits of an unspecified contractual relationship [ECF No. 22 p. 8].

Plaintiff's contractual rights and privileges, it did so in a manner that was directed towards plaintiff and not towards other white members of the community" [ECF No. 17 ¶ 70]. The SAC also makes a generalized allegation that Plaintiff was "discriminated against based on alleged violations of the contractually agreed to covenants and restrictions of the community Homeowner Association Rules and Regulations" [ECF No. 17 ¶ 63]. But the SAC never identifies which covenants and restrictions (i.e., the "benefits, privileges, terms, or conditions") of the Homeowner Association Rules and Regulations were violated by Defendant's actions.

Plaintiff says this flaw is not fatal because "the discriminatory behavior alleged in the complaint . . . clearly implicates intention[al] interference with Plaintiff['s] contractual rights to own property and be a member of Defendants' community" [ECF No. 22 p. 8]. The Court disagrees based on the statutory requirements of Section 1981(b). In sum, Plaintiff's allegations in the SAC do not rise above the level of generalized conclusory allegations with respect to which contractual rights were violated. The SAC's failure to identify the "benefits, privileges, terms, or conditions" of a contract that Defendant prevented Plaintiff from enjoying is fatal, because Section 1981 explicitly defines this as the right protected. Without identifying these privileges, it is still "entirely unclear which contractual covenants and restrictions were allegedly violated" [ECF No. 16 p. 5]. Dismissal of Count III is warranted.

### IV. Violation of 42 U.S.C. § 1982

Count IV of Plaintiff's SAC purports to bring a claim under 42 U.S.C. § 1982, which guarantees "[a]ll citizens . . . the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Courts generally construe Section 1981 and Section 1982 alike because of their "common language, origin, and purposes." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 448 (2008). In *Humphries*, the Supreme Court noted that Section 1982 differs from Section 1981 in only one meaningful way:

9

Section 1982 does not refer to the right to make and enforce contracts, but instead the right to "inherit, purchase, lease, sell, hold, and convey real and personal property." *Id.* Thus, to state a Section 1982 claim, a plaintiff must allege facts that show: "(1) the plaintiff is a racial minority; (2) the defendant intended to discriminate on the basis of race; and that (3) the discrimination concerned activities addressed in section 1982." *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1150 (S.D. Fla. 2004). Courts have interpreted the third element to require plaintiffs to allege that they were "deprived of the right to buy or sell property." *Id. See also Soto v. City of N. Miami*, No. CV 17-22090-CIV, 2017 WL 4685301, at *15 (S.D. Fla. Oct. 17, 2017).

This Court previously dismissed Count IV of Plaintiff's FAC because it did not contain any specific allegations clearly identifying how Plaintiff's right to inherit, purchase, lease, sell, hold, and convey real and personal property was infringed upon [ECF No. 16 p. 6]. The SAC suffers from the same problem. As before, Count IV fails to plead any facts that would indicate infringement upon Plaintiff's rights to inherit, buy, sell, lease, hold, or convey real property. And the record reflects that Plaintiff was able to purchase the property in 2013 and sell it without interference nine years later in 2022 [ECF No. 17 ¶¶ 9, 39]. Thus, while Defendant's alleged conduct of harassing Plaintiff and her family is reprehensible, "Section 1982 was never intended to, and does not reach, every racially discriminatory act that is somehow related to housing." *Lawrence*, 318 F. Supp. 2d at 1150 (citing to *Stackhouse v. DeSitter*, 620 F. Supp. 208, 209 (N.D. Ill. 1985)). Count IV is dismissed.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 18] is **GRANTED**.

2. The Second Amended Complaint [ECF No. 17] is **DISMISSED WITH PREJUDICE**.

3. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 5th day of October 2022.

                                                      **AILEEN M. CANNON**
                                                      **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record